```
                    UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF PENNSYLVANIA


PAUL D. OPSHINSKY,              :
                                :
           Plaintiff            :
                                :    NO. 3:CV-05-1901
        -vs-                    :
                                :    (Judge Kosik)
                                :
WING ENTERPRISES, INC.,         :
d/b/a/ LITTLE GIANT LADDER      :
COMPANY,a/k/a LITTLE GIANT      :
LADDER SYSTEMS,                 :
                                :
           Defendants           :
```

## **MEMORANDUM AND ORDER**

This matter is before us on the motion of the defense for summary judgment pursuant to Fed.R.Civ.P. 56.

### Background

The case resulted from an accident which occurred on or about September 18, 2003 involving the plaintiff and a ladder ("Little Giant Ladder") manufactured by Wing Enterprises.

Since there were no witnesses to the accident, we turned to the plaintiff's deposition taken at the instance of the defense. On the day of the accident, plaintiff was working for a local company. He was power washing a house in preparation for painting. Plaintiff used the power washer after a solvent was applied to the siding. The day was overcast, drizzly and there was occasional sprinkles of rain. At the time, plaintiff had thirty years experience in the use of ladders. He acknowledges having been

instructed in the use of ladders, and was told to be familiar with warnings, if any, posted on ladders. He had read the extensive warnings on the Little Giant Ladder he was using and understood them.[1] He had used the particular ladder on 110 or more occasions. However, on the day of the accident, it was the first occasion he used the ladder as an extension ladder, meaning it rose some thirteen feet. Photographs show the extended ladder against the home and roof line it was serving.

After completing his washing, plaintiff approached the ladder from the left to descend with the power washer wand in his right hand. He grabbed the ladder with his left hand on the left side of the ladder. He stepped on the first rung, just below the rain gutter, with his right foot. He picked up his left foot to bring it onto the same rung. As his left foot was moving or when it got on the rung, his right foot slipped and his feet went out from under him. He believes the slip resulted from water on the ladder or his shoes which may not have been slippery because they had a sponge sole which adhered well.

When further questioned about his movements on descent, plaintiff stated he was holding the ladder with his left hand, and was reaching around with his right hand. Although he did not hold onto the rail with his right hand immediately, it was "Because I put my hand, my thumb more or less behind the ladder to give me the

---

[1]The pertinent warning here provided: "Face ladder when climbing up or down. Maintain a firm grip and use both hands in climbing up or down. . . . Never climb ladder from the side unless ladder is secured . . . ."

same affect as holding on to pull myself into place." As he was falling, he "let go of the wand" and "I grabbed towards the ladder at least." He said he could not be sure if he grasped the ladder because "it happened too fast." As he fell, his weight shifted on the left side so that he was "holding on mainly with my left hand." His left hand slid down the side rail and went into a pinch point where the basic ladder and extended portion came together. This resulted in the injury to his fingers.

When pressed in his deposition as to his body configuration in relation to the ladder when putting his right foot on the rung, plaintiff stated: "I was standing off to the left of the ladder to start with and then it was in that motion to bring my right hand around to put my right hand on the ladder and my foot on it at the same time. Have the right foot on and then move the body in motion, put the right hand up." Plaintiff was then requested to demonstrate what occurred on the ladder itself. It must be noted that the ladder itself was not the cause of plaintiff's fall.

Plaintiff's expert was also deposed in discovery. He found no problem with the ladder itself, but the injury was caused by the condition of the pinch point. He acknowledges that plaintiff did not have his both hands on the ladder in attempting to descend, but that his attempt was not an unusual or unexpected way for people to use ladders. Although it was "inappropriate, given the cautionary instructions," it constituted a misuse, but not an unforeseeable or "unusual" misuse.

Plaintiff brings his case based on a design defect in that the ladder had a V-shape on the side which could result in an injury if one falls and grabs the ladder at the pinch point.

## Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

_Celotex Corp. v. Catrett_, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. However, the moving party can discharge that burden by

"'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, *supra*, 106 S.Ct. at 2553, 2554. Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials. The ". . . plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." If this occurs, a trial is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514.

Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988), citing *Anderson v. Lobby*, 106 S.Ct. at 2510, which also holds that only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.

In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

### Discussion and Conclusion

Defendant filed this motion for summary judgment claiming that under Pennsylvania law a manufacturer is not liable for damages caused by a misuse of the product, and that an unintended use, even if foreseeable, will not render a product defective. Further, as a matter of law, plaintiff's fall and accident were caused when he slipped on the ladder rather than by the ladder itself. The

reasons outlined in the motion for summary judgment were elaborated in the supporting brief.

The defense argues in its brief that the case fails because plaintiff is required to prove, as a matter of law, that the product in this case is unreasonably dangerous as required by Pennsylvania law. Section 402A, Restatement (Second) of Torts has been adopted as the law of strict products liability in Pennsylvania. The section provides in relevant part that "one who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm caused to the ultimate user or consumer, or to his property . . ." To establish a case under strict liability, a plaintiff must prove that the product was defective and that the defect caused plaintiff's injuries.

In *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 558, 391 A.2d 1020, 1026 (1978), the Pennsylvania Supreme Court held that the phrases "defective condition" and "unreasonably dangerous" as used in the Restatement are terms of art requiring a threshold and legal determination by the court as to whether a product is in a defective condition which justifies placing the risk of loss on the manufacturer or supplier. If the court makes this threshold determination of a defect as a matter of law, then the case is submitted to a jury to determine if the facts of the case support the averments of the complaint. These requirements are very well instructed in *Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir. 1997) and *Nowak by and through Nowak v. Faberge USA, Inc.*, 32 F.3d

755 (3d Cir. 1994), which also holds that the threshold decision concerning whether a product is defective as a matter of law can be difficult to make.  Both cases tell us how to apply the *Azzarello* standard under Pennsylvania law by applying a risk-utility standard.  The cases suggest several factors for the court to consider in making its often complex risk-utility analysis.[2]

I.

Defendant's proposed analysis of the factors is that the articulated ladder is a useful and desirable product; that the ladder itself did not cause the plaintiff to fall; that there is no substitute product that would have prevented the fall; nor was the fall an intended use; that the user could have avoided the fall by the exercise of due care and not misusing the ladder; and, that plaintiff was aware of the potential danger of falling off the ladder.

Plaintiff's analysis of the factors is not challenging the usefulness or desirability of the product but that the unprotected pinch points on the ladder, which plaintiff or anyone else falling could encounter in minimizing a fall, is a defect which negates the safe usefulness of the ladder; that the warnings on the ladder acknowledge falls can occur which could cause injury or death; that specifically named substitutes in design were available at a minimal cost to eliminate the pinch points which caused plaintiff's

---

[2] The Pennsylvania Superior Court has noted that the factors, seven in number, are merely suggestions for the court to consider in its analysis.  *Riley v. Warren Manuf. Inc.*, 688 A.2d 221, 225 (Pa.Super. 1997).

injury; that the fall itself caused no injuries; that the exercise of due care on the part of plaintiff is not relevant except in the context of misuse which plaintiff claims the evidence will negate; and, that in spite of various warnings, there were none alerting danger from the pinch points.

For the foregoing reasons, we conclude that the ladder was unreasonably dangerous and that strict liability should apply. *See Azzarello*, *supra*, (holding in strict liability design defect cases that once the court preliminarily decides whether a product is unreasonably dangerous, the plaintiff can go to the jury to establish a defect and that the defect caused the plaintiff's injuries).

## II.

The defense claims that under the factual context of plaintiff's claims, there was a misuse and an unintended use of the ladder which, even if foreseeable, will not render the product defective. Defendant relies on *Pennsylvania Department of General Services v. United States Mineral Products*, 587 Pa. 236, 898 A.2d 590 (Pa. 2006). Plaintiff's initial response failed to address *DGS v. USM*. Instead, plaintiff relied on numerous cases, state and federal, which guide the courts in interpreting Pennsylvania law prior to the most recent Pennsylvania Supreme Court case. The earlier cases gave credence to the inclusion of reasonable foreseeability in strict liability cases and allowed consideration of foreseeable misuse by an intended user as well as non-intended

users where foreseeable by a manufacturer.  The Supreme Court in *DGS v.USM* said:

> This was error . . . . [T]he case was tried solely under strict liability theory. In such actions, this court has held that a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user; the general rule is that there is no strict liability in Pennsylvania relative to non-intended uses even where foreseeable by a manufacturer.

898 A.2d at 600.  "The court has also construed the intended use criterion strictly, holding that foreseeable misuse of a product will not support a strict liability claim."  *Id.* at 601.  While acknowledging reasonable foreseeability as an argument which can be made, it contravenes the rule that foreseeability considerations have no place in the strict liability arena.  The decision in *DGS v. USM* mirrored much of the plurality opinion in *Phillips v. Cricket Lighters*, 576 Pa. 644 (2003).  The concurring opinion of Justice Saylor in the latter, noted deficiencies in the present strict liability doctrine.  He believes there is a compelling need for consideration of reasoned alternatives, such as are reflected in the position of the Third Restatement.  (Restatement Third) of Torts; Products Liability Section 2(a)-(c).[3]

Accepting the defendant's version of the factual evidence would require us to grant the motion for summary judgment because,

---

[3] When exercising jurisdiction based on diversity, a district court applies the existing substantive law of the state whose law governs the action.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Padella v. Browning Ferris Inc.*, 158 F.3d 183, 189 (3d Cir. 1998).

according to plaintiff's expert opinion, plaintiff, as an intended user, admittedly misused the product by not following the manufacturer instruction and warnings on assent and descent even though plaintiff acknowledges he read the instructions on more than one occasion.  On the other hand, plaintiff's expert claimed the misuse was not unusual, and that warnings do not eliminate the hazard of the pinch points which could have been very economically eliminated with a different design.  Regardless, plaintiff was in the process of descending.  In leaving the roof, he could only approach the ladder from the side; in this case, the left side.  He grabbed the left side of the ladder with his left hand.  He stepped on the first rung with his right foot.  He picked up his left foot to bring it on the same rung.  His right foot slipped.  He was in the process of reaching around with his right hand.  Because he had the spray wand in his right hand, he put his hand or thumb behind the ladder to give him the same affect as holding on to pull himself into place.  The warning instructed him to face the ladder and to maintain a firm grip and use both hands.  It cautioned one to never climb the ladder from the side unless it was secured.  Although everyone agrees the ladder itself did not cause plaintiff to fall, he had no choice but to approach the ladder from the left side. Was he in the process of complying with the instructions, or was he misusing the ladder?  Is there a genuine issue as to a material fact?  Is plaintiff's conduct affirmative evidence to defeat the motion for summary judgment?  We believe an affirmative

answer to all questions is appropriate.  Plaintiff need only present evidence for which a jury might return a verdict in his favor.

    The motion for summary judgment will be **DENIED**.

    SO ORDERED.

s/Edwin M. Kosik<br>
United States District Judge

Date: January 12, 2007